# EXHIBIT B



January 10, 2017

**Testimony by: Rob Wonderling, President and CEO, Chamber of Commerce for Greater Philadelphia in reference to Bill No 160840. This testimony was given on November 22, 2016.**

Good morning, Councilman Greenlee and members of the Committee on Law and Government. I am Rob Wonderling, President and CEO of the Chamber of Commerce for Greater Philadelphia. Thank you for the opportunity to testify on Bill No. 160840.

Much like members of this body, the Chamber shares concerns over wage inequality that exists among women and minorities when compared to white or male counterparts. The Chamber thanks City Council for its concern and willingness to take action to even the playing field for all employees.

However, we remain concerned about the proposed Wage Equity legislation due to a number of reasons including government overreach, absence of important information in the overall hiring process, varying business needs, potential lawsuits and unknown consequences.

The Chamber's mission is to attract, retain and grow jobs for the city and region. We follow principles of economic competitiveness to guide our public policy. We believe that "Government rules and regulations should provide for safe and responsive business operations, but should not be onerous, costly, or out of context with competitive locations. These regulations should be appropriate for the level of government enacting them (local, state, or Federal). Government must be conscious of the overall cost of doing business — taxes, fees, insurance, regulatory expense — so as to provide a competitive business environment."

Using this framework, we believe that Bill No. 160840 goes too far in dictating how employers can interact with potential hires.

When employers look at a candidates' salary history, they have a better understanding of whether a candidate is worth pursuing based on previous compensation levels as well as the market value or salaries for comparable positions. A salary history can serve as a benchmark to ensure that an organization is in fact paying a market-value wage for positions.

In speaking with our members, particularly those serving in a human resources capacity, we hear that compensation decisions are based on a number of different factors such as market value, internal equity, funding limitations and competition. It is not made based on a candidate's past salary history, gender or race.

Another reason that we remain concerned about this legislation is that not all businesses and organizations are alike—they range in size, industry, geography and talent needs. They should be able to utilize a full set of tools in order to find the right employees for their organization.

Passing this legislation at a local level, rather than at a state or federal level, will place a greater strain on those business and organizations with locations outside of Philadelphia because it requires changes in policies and procedures.

It will also impact small businesses or nonprofits in Philadelphia without robust HR departments as salary history can often indicate whether a candidate is worth pursuing.



Some of our members worry that the legislation as currently written could leave employers open to potential lawsuits. The Chamber respectfully asks for consideration of alternative language related to a few matters if the legislation moves forward, particularly around inquiry of history. We do understand that some steps are being made to alter this language.

Delete part of the definition of "to inquire" in Section 9-4502(3) to simply state that it means "to ask a job applicant in writing or otherwise." If "to inquire" includes searching publicly available records or reports, one could violate the law by conducting a basic internet search of an applicant, including looking him or her up on LinkedIn or a similar site. An entity can't control what information about an applicant internet searches will reveal; if one comes across wage information, even accidentally, an entity could violate the proposed law.

Delete the "knowingly" requirement from Section 9-4503(1)(b). It's good that the bill allows one to use voluntarily disclosed wage history, but how is one to know if such disclosure was made "knowingly"? In the same section, also delete the phrase "at any stage in the employment process, including the contract." It seems that the bill is trying to prevent inquiries into only prospective employees' wages, but including this phrase could create some confusion as to whether an entity can use an employees' wages as a baselines for future wage changes further along in the "employment process," i.e., after the employee has already started working for the entity.

Incorporate "Nothing herein shall prohibit an employer from verifying or relying on wage history, willingly disclosed by a prospective employee, for employment determinations or current or future wage determinations" into Section 9-4503 (b). Once a salary history is willingly given to an employer by an applicant, that employer may choose use that knowledge as they like.

Decrease the payment of punitive damages listed in Section 9-4506(d) from $2000 to $500. Lowering this penalty will decrease the chance that businesses, particularly small businesses, will be forced to close if found in violation. Instead, a lower fine will still encourage businesses to follow the law and be able to adjust employees' salaries accordingly.

The Chamber asks City Council to consider encouraging employers to do self-evaluations on wages. We did this voluntarily as an organization in order to ensure that the Chamber pays its employees fair market wages, and it was useful in identifying where adjustments needed to be made. This exercise is encouraged in the Massachusetts wage equity law. According to that law, doing so also helps protect employers who are taking steps to correct wage inequality if reasonable progress is demonstrated.

Finally, we caution against legislation that could have unintended consequences for our economy. It is unknown what the effect of this legislation is in Massachusetts or what the effect would be here in Philadelphia. The Chamber urges thoughtful and deliberate analysis when considering broad business regulations. We are happy to serve as partners in guiding legislation so as to best effectuate a policy's intent.

Thank you for the opportunity to testify on Bill No. 160840.

cc: District Council Members, Philadelphia
Council Members At-Large, Philadelphia