# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE CHAMBER OF COMMERCE FOR GREATER PHILADELPHIA, on behalf of its members, | : : : | |
| | : | Case No. 2:17-cv-1548 |
| Plaintiff, | : | |
| | : | Hon. Mitchell Goldberg |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA and PHILADELPHIA COMMISSION ON HUMAN RELATIONS, | : : : | |
| | : | |
| Defendants. | : | |

## BRIEF OF AMICI CURIAE AMERICAN CIVIL LIBERTIES UNION AND AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

INTERESTS OF *AMICI CURIAE* ........................................................................1

SUMMARY OF ARGUMENT ................................................................................1

ARGUMENT .............................................................................................................2

I.      The Ban on Using Salary History to Set a Prospective Employee's
        Compensation Does Not Violate Employers' First Amendment Rights
        Because It Regulates Employers' Non-Expressive Conduct. .......................3

II.     The Salary-Inquiry Ban Is Subject to Intermediate Scrutiny Because
        It Regulates Private Economic Activity in an Area Subject to Traditional
        Government Regulation.  ...............................................................................5

        A. The Salary-Inquiry Ban's Incidental Burden on Speech Is Part
           of a Valid Limitation on Economic Activity.  .......................................6

        B. The Salary-Inquiry Ban Is Not Subject to Strict Scrutiny Even
           If It Is Content-Based. ..........................................................................8

III.    Even If the Salary-Inquiry Ban Burdens Speech, It Does Not Violate
        Employers' First Amendment Rights Because It Is Squarely Aimed
        at the Speech that Causes the Harm It Seeks to Prevent..............................11

        A. Employer Demands for Salary History Relate to Unlawful Activity. ........11

        B. The Salary-Inquiry Ban Directly Advances Philadelphia's Compelling
           Interest in Preventing Gender-Based Wage Discrimination.  ....................13

                1. *The City of Philadelphia has a compelling interest in preventing
                   gender-based wage discrimination.* ................................................13

                2. *The Ordinance directly advances Philadelphia's substantial interest
                   in preventing gender-based wage discrimination.*...........................15

                3. *The Salary-Inquiry Ban is tailored to protect Philadelphia's interest
                   in preventing gender-based wage discrimination.*...........................18

CONCLUSION.........................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allegheny Ludlum Corp. v. N.L.R.B.*,
   301 F.3d 167 (3d. Cir. 2002) ......................................................................... 7

*Angove v. Williams-Sonoma, Inc.*,
   70 F. App'x 500 (10th Cir. 2003) ................................................................ 16

*Best v. Janerich*,
   80 F. Supp. 2d 334 (M.D. Pa. 1999) ........................................................... 16

*Board of Tr. of State Univ. of New York v. Fox*,
   492 U.S. 469 (1989) ..................................................................................... 18

*Boelter v. Advance Magazine Publishers, Inc.*,
   210 F. Supp. 3d 579 (S.D.N.Y. 2016) ..................................................... 9, 19

*Boelter v. Hearst Comm'ns, Inc.*,
   192 F.Supp.3d 427 (S.D.N.Y. 2016) ........................................................... 11

*Capobianco v. Summers*,
   377 F.3d 559 (6th Cir. 2004) ...................................................................... 20

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
   447 U.S. 557 ................................................................................. 6, 8, 11, 12

*Cole v. N. Am. Breweries*,
   No. 1:13-cv-236, 2015 U.S. Dist. LEXIS 6157 (S.D. Ohio Jan. 20, 2015) ............. 16

*Dana's R.R. Supply v. Attorney Gen., Fla.*,
   807 F.3d 1235 (11th Cir. 2015) ..................................................................... 9

*Edenfield v. Fane*,
   507 U.S. 761 (1993) ..................................................................................... 15

*Expressions Hair Design v. Schneiderman*,
   137 S. Ct. 1144 (2017) ............................................................................. 4, 5

*Glenn v. General Motors Corp.*,
   841 F.2d 1567 (11th Cir. 1988) ................................................................... 16

*King v. Governor of the State of New Jersey*,
   767 F.3d 216 (3d Cir. 2014) ................................................................. passim

*Lowe v. S.E.C.*,
   42 U.S. 181 (1985) ......................................................................................... 8

*McKinley v. Abbott*,
   643 F.3d 403 (5th Cir. 2011) ...................................................................... 20

*National Federation of the Blind v. Fed. Trade Comm'n*,
   420 F.3d 331 (4th Cir. 2005) ...................................................................... 11

*Nixon v. Shrink Mo. Gov't PAC*,
   528 U.S. 377 (2000) ..................................................................................... 16

*Nomi v. Regents for Univ. of Minnesota,*
   796 F. Supp. 412 (D. Minn. 1992) ........................................................... 8

*Ohralik v. Ohio State Bar Ass'n,*
   436 U.S. 447 (1978) ................................................................................ 19

*Pitt News v. Pappert,*
   379 F.3d 96 (3d Cir. 2004) .................................................................... 17

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,*
   413 U.S. 376 (1973) ....................................................... 1, 7, 11, 13

*POM Wonderful, LLC v. Fed. Trade Comm'n,*
   777 F.3d 478 (D.C. Cir. 2015) ............................................................... 11

*R.A.V. v. City of St. Paul,*
   505 U.S. 377 (1992) ................................................................................. 6

*RCP Publ'ns, Inc. v. City of Chicago,*
   204 F. Supp. 3d 1012 (N.D. Ill. 2016) .................................................... 9

*Ragin v. New York Times Co.,*
   923 F.2d 995 (2d Cir. 1991) .................................................................. 13

*Reed v. Town of Gilbert,*
   135 S. Ct. 2218 (2015) ............................................................................ 9

*Retail Dig. Network, LLC v. Prieto,*
   861 F.3d 839 (9th Cir. 2017) .................................................................. 9

*Roberts v. United States Jaycees,*
   468 U.S. 609 (1984) .............................................................................. 15

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.,*
   490 U.S. 477 (1989) .............................................................................. 10

*Rumsfield v. Forum for Academic and Institutional Rights,*
   547 U.S. 47 (2006) .............................................................................. 4, 5

*S.F. Apartment Ass'n v. City & Cty. of S.F.,*
   142 F. Supp. 3d 910 (N.D. Cal. 2015) .............................................. 8, 19

*Sorrell v. I.M.S. Health, Inc.,*
   564 U.S. 552 (2011) ....................................................................... 5, 7, 15

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly,*
   309 F.3d 144 (3d Cir. 2002) ............................................................... 3, 4

*Turner Broad. Sys., Inc. v. F. C. C.,*
   512 U.S. 622 (1994) ................................................................................ 7

*Turner Broad. Sys., Inc. v. F.C.C.,*
   520 U.S. 180 (1997) .............................................................................. 15

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council,*
   425 U.S. 748 (1976) ................................................................................ 4

*Valle Del Sol Inc. v. Whiting*,
   709 F.3d 808 (9th Cir. 2013) ................................................................. 8

*Walraven v. N.C. Board of Chiropractic Examiners*,
   273 F. App'x 220 (4th Cir. 2008) ......................................................... 20

*Wollschlaeger v. Governor of Fla.*,
   848 F.3d 1293 (11th Cir. 2017) ...................................................... 19, 20

**Federal Statutes**

15 U.S.C. § 52 .......................................................................................... 9

15 U.S.C. § 77e ........................................................................................ 9

15 U.S.C. § 1125 ...................................................................................... 9

42 U.S.C. § 2000ff-2 ............................................................................... 6

42 U.S.C. § 12112 .................................................................................... 9

**Federal Regulations**

41 C.F.R. § 60-300/23 .............................................................................. 6

**State Statutes**

Haw. Rev. Stat. § 378-2.5(a) ................................................................... 6

Wis. Stat. § 111/335 ................................................................................ 6

**Other Authorities**

AAUW, The Simple Truth about the Pay Gap (Spring 2017) ................... 16

Francine D. Blau & Lawrence M. Kahn, The Gender Wage Gap: Extent, Trends,
   and Explanations, NBER Working Paper No. 2193, National Bureau
   for Economic Research (2016) ......................................................... 2, 14

Helen Norton, *You Can't Ask (Or Say) That: The First Amendment and Civil Rights Restrictions
   on Decisionmaker Speech*, 11 Wm. & Mary Bill Rts. J. 727 (2003) ...................................... 12

## INTERESTS OF AMICI CURIAE

The American Civil Liberties Union (ACLU) is a nationwide, nonprofit, nonpartisan organization with more than 1.5 million members dedicated to the principles of liberty and equality embodied in the Constitution and our nation's civil rights laws.  The ACLU of Pennsylvania is one of its statewide affiliates.  Since its founding in 1920, the ACLU has vigorously defended First Amendment rights.  In addition, the ACLU, through its Women's Rights Project, has long been a leader in legal advocacy aimed at ensuring women's full equality and ending discrimination against women in the workplace.  The ACLU has appeared before the federal courts in numerous cases, both as direct counsel and as *amicus curiae*, including *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376 (1973) (holding that ordinance prohibiting gender-specific employment advertisements did not violate newspaper's First Amendment rights).  The proper resolution of this case is a matter of substantial interest to the ACLU and its members.

## SUMMARY OF ARGUMENT

The City of Philadelphia Fair Practices Ordinance prohibits discrimination on the basis of certain protected characteristics, including sex, in employment, public accommodations, and housing.   To further its interest in protecting workers from gender-based wage discrimination, the City amended the Fair Practices Ordinance in 2017 to prohibit employers from relying on applicants' prior salary in setting compensation for new employees.  The amended Fair Practices Ordinance ("Ordinance") also prohibits employers from asking prospective employees to provide their salary histories.  It is thus no different from numerous other civil-rights laws that bar employers from both using information about a prospective employee in a discriminatory manner and compelling a prospective employee to provide personal information that could be used to discriminate against her.  For example, the Americans with Disabilities Act prohibits employers

1

from discriminating against prospective employees on the basis of disability *and* asking prospective employees whether they have a disability during the hiring process.  Similarly, the Pennsylvania Human Relations Act prohibits employers from discriminating against prospective employees on the basis of race, color, religious creed, ancestry, age, sex, national origin, or disability *and* asking prospective employees about those characteristics during the hiring process.  No court has suggested, much less held, that these laws unconstitutionally infringe employers' speech.  Instead, any restriction on speech that results from these laws is incidental to a valid limitation on economic activity.

The Chamber of Commerce contends, however, that it has a First Amendment right to essentially compel prospective employees to provide their personal salary histories to aid the Chamber's commercial interests despite the well-founded risk that this inquiry could result in gender discrimination.  That argument is incompatible with a long line of court precedents affording diminished protection to speech in the employment, commercial, and professional contexts.  Accordingly, any burden that the Ordinance imposes on employer speech is subject to intermediate scrutiny.  The Ordinance, which is aimed directly at the speech that causes the harm Philadelphia seeks to prevent, survives that standard of review.

## ARGUMENT

The purpose of the Philadelphia Fair Practices Ordinance is to prevent employers from using a prospective employee's salary history in setting his or her compensation to combat the well-established sex discrimination that exists in the payment of wages.[1]  It does so by

---

[1] *See* Francine D. Blau & Lawrence M. Kahn, The Gender Wage Gap: Extent, Trends, and Explanations, NBER Working Paper No. 2193, National Bureau for Economic Research (2016), http://www.nber.org/papers/w21913 (last visited Aug. 29, 2017); IWPR, The Gender Wage Gap by Occupation 2016 and By Race and Ethnicity 1 (2017), https://iwpr.org/wp-

prohibiting employers from relying on salary history to determine a prospective employee's new salary.  In furtherance of its purpose, the Ordinance also prohibits employers from asking job candidates to submit their salary history.  Contrary to the Chamber of Commerce's argument, the prohibition on the employer's *reliance on* or *use* of salary history in setting a prospective employee's compensation does not implicate the free-expression rights of employers.   And while the ban on salary-history inquiries may impose a minimal burden on employers' speech, that burden is incidental to the Ordinance's regulation of economic activity and is subject, at most, to intermediate scrutiny.  Thus, for the reasons set forth below, the Ordinance does not violate employers' free-expression rights.

I.    **The Ban on Using Salary History to Set a Prospective Employee's Compensation Does Not Violate Employers' First Amendment Rights Because It Regulates Employers' Non-Expressive Conduct.**

"Conduct is expressive if, considering the nature of [the] activity, combined with the factual context and environment in which it was undertaken, we are led to the conclusion that the activity was sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments."[2]  This "is a fact-sensitive, context-dependent inquiry, and [] the putative speaker bears the burden of proving that his or her conduct is expressive."[3]  The Chamber of Commerce has failed to provide any basis on which to conclude that the use of prospective employees' history is "inherently expressive."   It is thus a valid regulation of economic activity that imposes no burden on First Amendment-protected expression.

---

content/uploads/2017/04/C456.pdf; *see generally* Br. of Amicus Curiae Women's Law Project  at 14-16.

[2] *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 160–61 (3d Cir. 2002) (internal quotation marks and citations omitted).

[3] *Id.* (internal quotation marks and citations omitted).

People use information they receive from others to make decisions every day that have no expressive component, even if the communication of that information in the first instance would be protected.  For example, people use information about prices of goods to decide which goods to buy and where to buy them, but the act of purchasing those items is not protected speech.[4] That is because First Amendment protection is extended "only to conduct that is inherently expressive"[5] or conduct that is intended to convey a message *and* likely to be understood as conveying a message.[6]  Like a merchant deciding to offer a good at a certain price based on information about the market demand, the decision about how much compensation to offer a prospective employee based on information about the employee's salary history is not "inherently expressive."  Indeed, there are many laws that prohibit the use of information for certain purposes:  Laws against insider trading prohibit the use of privileged information to buy or sell stocks, and laws against discrimination prohibit the use of information about an individual—that she is married, pregnant, has children, is from another country, or has a disability, just to name a few—to decide whether to rent an apartment to her or hire her for a job.

The fact that the salary offer is communicated to the employee does not change the analysis.  The Ordinance does not tell employers how they may communicate salary offers or even prevent them from telling prospective employees that the employer is not permitted to consider the employee's salary history in setting her compensation.[7]  As the U.S. Supreme Court

---

[4] *Cf. Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 749 (1976) (First Amendment protects consumer's interest in free flow of commercial information because it is indispensable to well-informed private economic decisions).

[5] *Rumsfield v. Forum for Academic and Institutional Rights*, 547 U.S. 47, 66 (2006).

[6] *Tenafly Eruv Ass'n*, 309 F.3d at 164.

[7] *Cf. Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1151 (2017) (law regulating how sellers may communicate their prices regulates speech but law regulating prices does not).

explained in a recent decision, a law that regulates the amount a business can charge for an item regulates conduct, not speech, even though the business would have to communicate that price because "the law's effect on speech would be only incidental to its primary effect on conduct, and 'it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'"[8]  The Ordinance regulates the employer's act of setting a prospective employee's compensation, not how the employer may communicate it.  It thus regulates conduct, not speech.[9]

## II.    The Salary-Inquiry Ban Is Subject to Intermediate Scrutiny Because It Regulates Private Economic Activity in an Area Subject to Traditional Government Regulation.

The purpose of the Ordinance is to prevent the perpetuation of wage-based gender discrimination by limiting the information that an employer can consider when deciding what salary to offer a prospective employee.  To ensure that employers do not improperly base a salary offer to a prospective employee on her salary history, the Ordinance prohibits employers from requesting that information during the hiring process.  The salary-inquiry ban is thus attendant to the Ordinance's regulation of employer hiring, an area traditionally subject to

---

[8]  *Id.* at 1150-51 (quoting *Rumsfeld*, 547 U.S. at 62).

[9]  The Ordinance's ban on use of salary history is distinguishable from the law at issue in *Sorrell v. I.M.S. Health, Inc.*, 564 U.S. 552 (2011).  In that case, a Vermont statute prohibited "pharmaceutical manufacturers and … marketers [from using] prescriber-identifiable information for marketing or promoting a prescription drug."  *Id.* at 559 (citing Vt. Stat. Ann., Tit. 18, § 4631(d)).  The Supreme Court held that the law's proscription on the use of the information *for marketing purposes* implicated the free speech rights of manufacturers and marketers. *See id.* at 564.  "Marketing," as defined in the Vermont statute, included "advertising, promotion, or any activity" that is "used to influence sales or the market share of a prescription drug."  Vt. Stat. Ann., Tit. 18, § 4631(b)(5).  There, marketing clearly had an expressive component, and restriction of that expressive conduct implicated the plaintiff's free speech rights.

government regulation.[10]  Speech that arises in areas traditionally subject to government

regulation is subject to lesser First Amendment protection.[11]  This is so even for speech that is

restricted on the basis of its content if "the basis for the content discrimination consists entirely

of the very reason the entire class of speech at issue is proscribable."[12]  In this case, Philadelphia

has banned employers from inquiring about salary history from prospective employees because

such inquiries are likely to lead to discrimination, which is the very harm that justifies the City's

regulation of employer hiring in the first instance.  Accordingly, the salary-inquiry ban, to the

extent it is entitled to heightened scrutiny at all, is subject to intermediate scrutiny.

### A. The Salary-Inquiry Ban's Incidental Burden on Speech Is Part of a Valid Limitation on Economic Activity.

Under the Ordinance, an employer cannot compel job applicants to provide their salary

history, though applicants may knowingly and voluntarily provide it.  For this reason, the

Chamber contends that the Ordinance's inquiry provision burdens employer speech.  But any

burden that the salary-inquiry ban places on employer speech is incidental to the primary purpose

---

[10] *See, e.g.*, Haw. Rev. Stat. § 378-2.5(a) (forbidding employers, in most fields, from inquiring about applicants' criminal records); Wis. Stat. § 111/335 (forbidding employers from asking applicants about an arrest record, unless a charge is pending);  42 U.S.C.  § 2000ff-2 (forbidding employers from requesting genetic information about any individual or family member of the individual); 41 C.F.R. § 60-300/23 (prohibiting a contractor from "requir[ing] a medical examination of an applicant or employee").

[11] *See, e.g.*, *Central Hudson.  Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. at 563 (according lesser First Amendment protection to commercial speech, "which occurs in an area traditionally subject to government regulation"); *King v. Governor of the State of New Jersey*, 767 F.3d 216, 232 (3d Cir. 2014)  (according lesser First Amendment protection to professional speech in light of state's regulatory authority over such speech).

[12] *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992); *accord King*, 767 F.3d at 230.

of the Ordinance—preventing gender-based wage discrimination by prohibiting employers from using a prospective employee's salary history to set compensation for that individual.

In *Sorrell*, the U.S. Supreme Court explained that "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."[13] According to the Court, "[t]hat is why a ban on race-based hiring may require employers to remove "White Applicants Only" signs; why an ordinance against outdoor fires might forbid burning a flag; and why antitrust laws can prohibit agreements in restraint of trade."[14] In this case, the Ordinance is directed at employers' conduct—the use of salary history in setting compensation—not speech. The restriction on inquiries about a prospective employee's salary history is merely incidental to the Ordinance's content-neutral purpose of preventing gender-based wage discrimination and is thus subject to intermediate scrutiny.[15]

Even if the Ordinance poses more than an incidental burden on speech, it is nevertheless subject to no more than intermediate scrutiny because the speech at issue is commercial speech, which is traditionally subject to government regulation. Courts that have considered the issue have held that communications related to the formation of an employment contract constitute

---

[13] *Sorrell v. IMS Health Inc.*, 564 U.S at 567.

[14] *Id.* (internal quotation marks and citations omitted); *see also Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 389 (1973) (ordinance's restriction on advertising indicating sex discrimination was "incidental to a valid limitation on economic activity"); *Allegheny Ludlum Corp. v. N.L.R.B.*, 301 F.3d 167, 177-78 (3d. Cir. 2002) (government can prohibit employers from polling workers about union sympathies to protect workers' right to form union from being chilled).

[15] *See Turner Broad. Sys., Inc. v. F. C. C.*, 512 U.S. 622, 662 (1994) ("[T]he intermediate level of scrutiny [is] applicable to content-neutral restrictions that impose an incidental burden on speech,").

commercial speech.[16]  That is because commercial speech is not limited to advertising, but includes "expression related solely to the economic interests of the speaker and its audience."[17] The  Supreme Court "has repeatedly emphasized that commercial speech enjoys only diminished protection 'because it occurs in an area traditionally subject to government regulation.'"[18]  Of course, the terms and conditions of employment are also highly regulated, and the government's interest in enforcing those regulations "may give it a concomitant interest in the expression itself."[19]  Accordingly, the salary-inquiry ban, which regulates speech related to the formation of an employment contract, is subject to intermediate scrutiny.[20]

### B. The Salary-Inquiry Ban Is Not Subject to Strict Scrutiny Even If It Is Content-Based.

Intermediate scrutiny is the appropriate standard of review even if, as the Chamber of Commerce contends, the salary-inquiry ban is a content-based restriction on speech.  First, commercial speech continues to be an exception to "the general rule that content-based

---

[16] *See Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 818 (9th Cir. 2013) (analyzing restriction on in-street employment solicitation that blocked or impeded traffic as commercial speech); *Nomi v. Regents for Univ. of Minnesota*, 796 F. Supp. 412, 417 (D. Minn. 1992) (analyzing military recruitment activity on college campus as commercial speech); *see also See King*, 767 F.3d at 230 ("'Just as offer and acceptance are communications incidental to the regulable transaction called a contract, the professional's speech is incidental to the conduct of the profession…'") (quoting *Lowe v. S.E.C.*, 42 U.S. 181, 232 (1985)) (J. White., concurring in the result)).

[17] *Cent. Hudson,* 447 U.S. 557, 561 (1980); *cf. S.F. Apartment Ass'n v. City & Cty. of S.F.*, 142 F. Supp. 3d 910, 922 (N.D. Cal. 2015) (rejecting argument that "relationship and the ongoing terms of the arrangement" between a landlord and tenant can "transform a conversation … concerning a possible buyout into something other than a discussion proposing a commercial transaction.").

[18] *King v. Governor of the State of New Jersey*, 767 F.3d 216, 234 (3d Cir. 2014) (quoting *Central Hudson*, 447 U.S. at 562).

[19] *Id.* (internal quotation marks omitted).

[20] *Id.* (explaining that commercial speech is subject to intermediate scrutiny).

restrictions trigger strict scrutiny."[21]   And second, content-based restrictions on lesser-protected categories of speech do not trigger strict scrutiny when the restrictions are directly related to the government's authority to regulate the speech in the first place.

Subjecting all content-based restrictions on commercial speech to strict scrutiny would eviscerate the Supreme Court's precedents according lesser protection to commercial speech because "[a]ppropriately tailored regulations of commercial speech...will necessarily target specific content and speakers."[22]   Commonsense regulations of commercial speech often involve content-based distinctions, as in regulations of false advertising generally,[23] trademark use,[24] and securities,[25] just to name a few.  Subjecting these regulations to strict scrutiny would

---

[21] *Dana's R.R. Supply v. Attorney Gen., Fla.*, 807 F.3d 1235, 1246 (11th Cir. 2015) Although the Chamber of Commerce cites the Supreme Court's decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), in support of its assertion that the Ordinance is subject to strict scrutiny, the *Reed* Court did not explicitly overturn, or even mention, *Central Hudson* or its progeny.  *See id.*  In the years since *Reed* was decided, every court confronted with a content-based restriction on commercial speech has applied *Central Hudson*'s intermediate scrutiny, rather than strict scrutiny. *See Retail Dig. Network, LLC v. Prieto*, 861 F.3d 839, 849-50 (9th Cir. 2017) (applying *Central Hudson*'s intermediate scrutiny to a provision limiting commercial speech); *Boelter v. Advance Magazine Publishers, Inc.*, 210 F. Supp. 3d 579 n.15 (S.D.N.Y. 2016) (declining to read *Reed* as overturning established commercial speech doctrine and continuing to apply *Central Hudson* to commercial speech); *RCP Publ'ns, Inc. v. City of Chicago*, 204 F. Supp. 3d 1012, 1017-18 (N.D. Ill. 2016) (holding that "*Central Hudson* and its progeny continue to control the propriety of restrictions on commercial speech").

[22] *See Dana's R.R. Supply*, 807 F.3d at 1248 (citations omitted).

[23] *E.g.*, 15 U.S.C. § 52 (prohibiting persons or companies from disseminating advertisements that are misleading in a material respect).

[24] *E.g.*, 15 U.S.C. § 1125 (prohibiting use of false or misleading descriptions of fact likely to cause confusion or mistake as to origin, sponsorship, or approval of commercial activities).

[25] *E.g.* 15 U.S.C. § 77e (prohibiting securities issuers from utilizing advertising mediums, such as newspapers or television, available to other sellers of goods).

substantially weaken the government's authority to protect the public, and there is nothing in *Reed* to suggest such a result is warranted or required.[26]

Further, the Court of Appeals for the Third Circuit has rejected the argument that government regulations that incidentally burden speech are always subject to strict scrutiny if they discriminate on the basis of content.[27]  In *King*, the court applied intermediate scrutiny to a state statute prohibiting licensed counselors from engaging in efforts to change patients' sexual orientation.[28]  Although the court agreed that the statute was a content-based restriction on speech, it held that the speech at issue was entitled to lesser First Amendment protection because it arose in an area traditionally subject to government regulation, and the statute's content-based restriction on the counselors' speech was justified by the same interests that allowed the state to regulate the practice of the counseling profession.[29]  Under those circumstances, the court held, restrictions on speech are subject to intermediate scrutiny, even if they are content-based.[30]

The same is true here.  The reason speech related to the formation of an employment contract receives diminished protection—because of Philadelphia's authority to regulate the terms and conditions of employment to protect city workers—is precisely the reason Philadelphia targeted employer inquiries about salary history.[31]  The purpose of the Ordinance is

---

[26] This Court should rely on *Central Hudson* for commercial speech, unless and until the Supreme Court explicitly states otherwise, and apply an intermediate standard of review to the salary-inquiry ban. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower] [c]ourt should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

[27] *King*, 767 F.3d at 236.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 235.

[31] *See id.* at 237.

to protect workers from gender-based wage discrimination.  To subject the salary-inquiry ban to strict scrutiny because it prohibits employers from demanding a particular piece of information, rather than all information, or because it applies to employers but not lenders, would hamstring the government's ability to enact regulations to protect the public from fraud,  invasion of privacy, misleading advertisements, disclosure of private information, and in this case, discrimination.[32]  Because the salary-inquiry ban is intended to prevent the very harm that justifies the City's regulation of employment in the first place, the salary-inquiry ban is subject to intermediate scrutiny.

### III.   Even If the Salary-Inquiry Ban Burdens Speech, It Does Not Violate Employers' First Amendment Rights Because It Is Squarely Aimed at the Speech that Causes the Harm It Seeks to Prevent.

#### A.  Employer Demands for Salary History Relate to Unlawful Activity.

The Supreme Court has made clear that the government can restrict "commercial speech related to illegal activity" without violating the First Amendment.[33]  Under the Ordinance, it is unlawful for employers to rely on the salary history of a prospective employee in "determining the wages for such an individual."  Phila. Code § 9-1131(2)(a)(ii).  If an employer cannot use a prospective employee's salary history in setting compensation, then it follows that the employer

---

[32] *See, e.g.*, *National Federation of the Blind v. Fed. Trade Comm'n*, 420 F.3d 331, 340 (4th Cir. 2005) (holding FTC regulations of telemarketers which prevent fraud and protect privacy in the home do not violate the First Amendment); *POM Wonderful, LLC v. Fed. Trade Comm'n,* 777 F.3d 478, 484 (D.C. Cir. 2015) (holding that "[t]he FTC Act proscribes—and the First Amendment does not protect— deceptive and misleading advertisements" and upholding order requiring proof of advertised claims); *Boelter v. Hearst Comm'ns, Inc.,* 192 F.Supp.3d 427, 446 (S.D.N.Y. 2016) (applying intermediate scrutiny and upholding law that prevents unauthorized disclosure of consumers' identifying information to third parties).

[33] *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 564 (citing *Pittsburgh Press Co.*, 413 U.S. at 388).

cannot demand that the employee provide that information either, even if the request is considered to be expressive.

The government regularly prohibits decisionmakers like employers from demanding that applicants provide information that could facilitate discrimination.[34]  One notable example is the Americans with Disabilities Act (ADA), which prohibits employers from asking job applicants disability-related questions.[35]  In explaining that prohibition, Congress noted that employers often used inquiries into applicants' disabilities to discriminate against them "before their ability to perform the job was ever evaluated."[36]  By restricting employers from asking questions about employees' disabilities, Congress aimed to prevent employers from obtaining information they might use to discriminate.[37]  The fact that employers could use information about applicant disabilities in a nondiscriminatory fashion did not change Congress' conclusion that the risk of discrimination was great enough to warrant a ban on such inquiries.  Similarly, here, the Ordinance's ban on demanding a prospective employee's salary history prevents employers from obtaining information that they may use to discriminate against female employees by setting a lower salary.  Thus, even if it is considered a regulation of speech, the salary-inquiry ban is permissible under *Central Hudson* because it restricts speech that is likely to be used to facilitate prohibited conduct.

Although the Chamber of Commerce contends that salary-history inquiries cannot be rendered illegal simply by reference to the Ordinance's ban on use of that information, the  Court

---

[34] Helen Norton, *You Can't Ask (Or Say) That: The First Amendment and Civil Rights Restrictions on Decisionmaker Speech*, 11 Wm. & Mary Bill Rts. J. 727 (2003).

[35] *See* 42 U.S.C. § 12112.

[36] Norton, *supra* note 34 at 734-735 (citing H.R. Rep. No. 101-485, pt. 2, at 72 (1990)).

[37] Norton, *supra* note 34 at 735.

of Appeals for the Second Circuit rejected that argument in *Ragin v. New York Times Co.*[38]  In

that case, the court held that a ban on advertising indicating a racial preference in housing did not

violate the First Amendment because housing discrimination was illegal under the Fair Housing

Act.[39]  Such reasoning was not circular, according to the court, because there was no doubt about

Congress' power to prohibit speech that directly furthers discriminatory sales or rentals of

housing:  "Given that Congress's power to prohibit such speech is unquestioned, reliance upon

the statute to determine the illegality of ads with a racial message is not circular but

inexorable."[40]  It follows that if Philadelphia has the power to bar employers from using salary

history in determining a prospective employee's compensation, then it can ban speech that

directly furthers that illegal activity as well.

### B. The Salary-Inquiry Ban Directly Advances Philadelphia's Compelling Interest in Preventing Gender-Based Wage Discrimination.

Even if the salary-inquiry ban is not deemed to bar speech related to an illegal activity, it

does not violate the First Amendment rights of employers because it: (1) serves Philadelphia's

compelling interest in preventing gender-based wage discrimination; (2) directly advances that

interest; and (3) is narrowly focused on achieving that interest.

*1.  The City of Philadelphia has a compelling interest in preventing gender-based wage discrimination.*

Sex-based wage discrimination is a longstanding problem that has plagued the United

States for decades.  Although Congress passed the Equal Pay Act more than 50 years ago, the

---

[38] 923 F.2d 995 (2d Cir. 1991).

[39] *Id.* at 1003.

[40] *Id.*; *see Pittsburgh Press Co.* 413 U.S. at 389 (ban on advertisements indicating sex discrimination did not violate First Amendment because sex discrimination in employment was illegal).

gender wage gap remains. [41]  *See* Phila. Code § 9-1131(1)(b).  Nationwide, women continue to

earn, on average, 80 cents for every dollar a man is paid, even though many women have

comparable or more advanced job qualifications, including more education and work

experience.[42]  Even controlling for various non-discriminatory factors that may lead to

differences in pay between men and women, a substantial percentage of the gender wage gap

cannot be explained by neutral factors.[43]  Furthermore, lower pay for women results in higher

poverty rates among women across the country.  The gender wage gap results in the loss of

billions of dollars of spending power for women.[44]  Given that women are increasingly the sole

or primary breadwinners for their families, depressed wages for women impact their children,

spouses, and communities.[45]  *See* Phila. Code § 9-1131(1)(d).  Philadelphia, therefore, has an

---

[41] *See* Blau & Kahn, *supra* note 1; IWPR, *supra* note 1; *see generally* Br. of Amicus Curiae Women's Law Project at 12.

[42] *See* AAUW, The Simple Truth about the Pay Gap (Spring 2017) at 6; *see generally* Br. of Amicus Curiae Women's Law Project at 12.

[43] *See* Blau & Kahn, *supra* note 1 at 8; *see generally* Br. of Amicus Curiae Women's Law Project at 14–15.

[44] *See* National Partnership for Women & Families, Pennsylvania Women and the Wage Gap (April 2017) (gender wage gap costs Pennsylvania women and their families $34 billion each year).

[45] IWPR, The Economic Impact of Equal Pay by State 1 (2017), https://iwpr.org/wp-content/uploads/2017/05/C457.pdf; *see* Pew Research Center, Breadwinner Moms (May 29, 2013), http://www.pewsocialtrends.org/2013/05/29/breadwinner-moms/.

economic interest in preventing gender-based wage discrimination—in addition to its interest in eradicating sex discrimination[46]—to create a fairer, more equitable society.

>    2.   *The Ordinance directly advances Philadelphia's substantial interest in preventing gender-based wage discrimination.*

To comport with the First Amendment, the salary-inquiry ban must "directly advance[] a substantial government interest."[47]  This element is satisfied if Philadelphia can "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree."[48]  Because there is "substantial evidence" that using a prospective employee's wage history in determining salary perpetuates the gender wage gap, it follows that the Ordinance— by prohibiting employers from both relying on salary history and asking for that information from prospective employees in setting compensation—will have the effect of alleviating the gender wage gap.[49]

Philadelphia's conclusion that using an applicant's salary history to determine compensation perpetuates the gender wage gap does not rest on "mere speculation or conjecture," but instead is supported by both evidence and common sense.[50]  From the moment women enter the workforce, they receive pay that is lower than that of their similarly situated

---

[46] *See Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984) (recognizing government's "compelling interest in eradicating discrimination against its female citizens").

[47] *Sorrell*, 564 U.S. at 572.

[48] *Edenfield v. Fane*, 507 U.S. 761, 771 (1993).

[49] *See King*, 767 F.3d at 238 ("Even when applying intermediate scrutiny, however, we do not review a legislature's empirical judgment *de novo*—our task is merely to determine whether the legislature has 'drawn reasonable inferences based on substantial evidence.'") (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 195 (1997)).

[50] *Edenfield*, 507 U.S. at 770.

male counterparts.[51]  Employers who rely on past salaries will therefore perpetuate gender-based

wage discrimination by basing future pay on the depressed wages women receive from the start

of their careers.[52]  It is for this reason that the Equal Employment Opportunity Commission

(EEOC) advises employers to avoid basing salary decisions on prior wages.[53]  Federal courts

have also found that relying on wage history is an inappropriate means of determining pay

because it perpetuates historical inequities.[54]

      "'The quantum of empirical evidence needed to justify heightened scrutiny of legislative

judgments will vary up or down with the novelty and plausibility of the justification raised.'"[55]

Here, Philadelphia's concern that allowing employers to rely on salary history will perpetuate

gender-based wage discrimination is not mere speculation or conjecture; it is supported by

---

[51] *See* AAUW, Graduating to a Pay Gap: The Earnings of Women and Men One Year after College Graduation 2 (2012) http://www.aauw.org/files/2013/02/graduating-to-a-pay-gap-the-earnings-of-women-and-men-one-year-after-college-graduation.pdf; *see generally* Br. of Amicus Curiae Women's Law Project at 14.

[52] *See* U.S. Equal Employment Opportunity Comm'n (EEOC), Compliance Manual, No. 9.15.003 § 10-IV.F.2.g (Dec. 2000), https://www.eeoc.gov/policy/docs/compensation.html (practice of basing salary decisions on prior wages perpetuates "inequality in compensation among genders"); *see generally* Br. of Amicus Curiae Women's Law Project at 17–18.

[53] *See* EEOC, *Tips for Small Businesses*, https://www.eeoc.gov/employers/smallbusiness/checklists/pay_tips.cfm (last visited August 30, 2017).

[54] *See, e.g.*, *Cole v. N. Am. Breweries*, No. 1:13-cl-236, 2015 U.S. Dist. LEXIS 6157, at *29-30 (S.D. Ohio Jan. 20, 2015) (finding employer improperly used a female hire's prior salary to set her pay substantially lower than male employees performing same job); *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir. 1988) (prior salary alone cannot justify pay disparity; *Angove v. Williams-Sonoma, Inc.*, 70 F. App'x 500, 508 (10th Cir. 2003) (finding that the Equal Pay Act "precludes an employer from relying solely upon a prior salary to justify pay disparity"); *but see Best v. Janerich,* 80 F. Supp. 2d 334, 337 (M.D. Pa. 1999) ("the law is clear that an employer may reward experience and consider prior salary without violating the EPA."), *aff'd,* 208 F.3d 205 (3d Cir. 2000).

[55] *King*, 767 F.3d at 238 (quoting *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 391 (2000).

guidance issued by the EEOC.[56]  When a legislative body's "empirical judgment is highly plausible," as Philadelphia's is in this case, it "is not constitutionally required to wait for conclusive scientific evidence before acting to protect its citizens."[57]

The Ordinance's prohibition on employer demands for salary history is necessary to achieve the overall legislative purpose of preventing employers from perpetuating gender-based wage discrimination by relying on salary history in setting compensation.  Without the salary-inquiry ban, it would be virtually impossible for Philadelphia to enforce its prohibition against relying on salary history to set compensation.  After all, if the employer does not know the prospective employee's salary history, then the employer will be unable to use it to set compensation.  By contrast, it is highly likely that despite the reliance ban, employers will use prospective employees' salary history to set compensation if they can demand that information from applicants, and it will be virtually impossible for prospective employees to learn whether the wages they are offered have been impermissibly based on their salary history.  Philadelphia's ability to enforce the reliance ban thus rests on its capacity to prohibit salary-history inquiries.  By ensuring that employers cannot use salary history in setting compensation or demand that information from prospective employees, the Ordinance substantially reduces the likelihood that the harm it is trying to prevent—the use of salary history to perpetuate gender-based wage discrimination—will occur.  The Ordinance directly advances the government's interest in preventing the perpetuation of the gender wage gap.

---

[56] *Id.* (quoting *Pitt News v. Pappert*, 379 F.3d 96, 107 (3d Cir. 2004)).

[57] *Id.* at 239.

3.   *The Salary-Inquiry Ban is tailored to protect Philadelphia's interest in preventing gender-based wage discrimination.*

To survive intermediate scrutiny, Philadelphia must establish a fit between the Ordinance's goals and its methods that "'is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'"[58]  The salary-inquiry ban plainly meets this test.  Any burden that the Ordinance imposes on speech is quite limited, as it merely prohibits employers from inquiring about prospective employees' salary history.  It is difficult to envision a more cabined approach to meeting Philadelphia's goal of ensuring that prior salary history is not used to perpetuate wage discrimination.

Although the ordinance prohibits employers from demanding salary history from prospective employees, it permits employees to disclose that information to employers if they so choose and allows employers to obtain salary information from other sources.  Those allowances ensure that prospective employees will not be compelled to provide personal information that may be used to discriminate against them, while still permitting a prospective employee to disclose her prior salary if she believes it will be helpful in negotiating a higher salary, and permitting employers to collect information about market salary rates.

The salary-inquiry ban protects individuals who do not wish to share their wage history— because they fear it will be used to discriminate against them, because they believe it does not reflect their worth, or simply because they prefer to keep the information private—from retaliation. The Supreme Court has recognized that this type of prophylactic measure to limit interactions is appropriate where the potential for harm is heightened by differences in individuals' authority

---

[58] *King*, 767 F.3d at 239 (quoting *Board of Tr. of State Univ. of New York v. Fox*, 492 U.S. 469, 480 (1989)).

levels.[59]  The fact that the Ordinance allows prospective employees to disclose their salary histories

if they choose to does not render the Ordinance underinclusive; rather it demonstrates that any

burden the salary-inquiry ban imposes on speech is no more extensive than necessary to meet

Philadelphia's interest in protecting employees from gender-based wage discrimination.[60]

Indeed, the Ordinance still allows employers to collect information about salaries from

other sources.  For example, they can ask other employers what they pay in salary for certain

positions.  Or they can ask about salary history from a candidate who has been rejected for a

position or from a candidate who has already been hired at a specific salary.  The only individual

from whom an employer cannot demand salary history is the prospective employee herself, and

for good reason.  Individuals who are still being considered for a position will feel compelled to

provide their salary history to employers who request it, or risk losing their chance at being hired

for the position.[61]  The salary-inquiry ban thus makes it substantially more difficult for

---

[59] *See generally Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978) (Ohio State Bar Association's suspension of attorney for conducting in-person solicitation of clients immediately following traumatic car accident did not violate attorney's First Amendment rights due to strong potential for harm when an "unsophisticated, injured, or distressed lay person" communicated with a "professional trained in the art of persuasion"); *see also S.F. Apartment Ass'n*, 142 F. Supp. 3d at 924-25 (ordinance requiring landlords to refrain from entering into buyout negotiations with tenants until landlords provided tenants with disclosures of their rights was narrowly tailored to city's interest in improving fairness of buyout negotiations and agreements "because the landlord [was] prohibited from speaking to the tenant only until he/she/it [had] provided the disclosures.")

[60] *See Boelter v. Advance Magazine Publishers, Inc.*, 210 F. Supp. 3d 579, 600–02 (S.D.N.Y. 2016) (state law that prohibited individuals who sell rent, or lend books, other written materials, or sound and video recordings from disclosing identifying information about their customers without their consent was not under inclusive; it furthered government's interest in consumer privacy by allowing for consumers to waive their own privacy rights).

[61] The risk of employer retaliation against a prospective employee who refuses to provide their salary history is an important distinction from the statute at issue in *Wollschlaeger v. Governor of Fla.,* 848 F.3d 1293 (11th Cir. 2017) (en banc). In that case, the court held that state officials failed to support their claim that a statute prohibiting doctors from asking patients about firearms in the home was necessary to protect patients' privacy because the law also allowed patients to decline to answer any questions about firearms. *Id.* at 1314.  In this case, however, even if the Ordinance

employers to obtain salary history at the time they are most likely to rely on it for setting a prospective employee's compensation, while still allowing employers to obtain information about salary history for other purposes, such as trying to determine the market rate for a particular position.[62]

The Ordinance prohibits employers from demanding a very specific piece of information from prospective employees.  It does not restrict employers' freedom to inquire into an applicant's work experience, education, or references, nor does it prohibit an employer from communicating its views regarding the value of salary history to the hiring process.  By restricting employers' ability to ask about salary history from prospective employees, the Ordinance, to the extent it burdens speech at all, does no more, and no less, than limit those inquiries that would allow, and even incentivize, employers to provide lower wages to women based on prior salary.

---

allowed job seekers to decline to provide their salary history, they would nevertheless feel compelled to do so if that information is requested by employers for fear they will not get the job if they refuse. Moreover, a recent survey shows that women who are asked and refuse to disclose their previous salary make 1.3% *less* than those who do disclose; men who refuse to disclose make 1.2% *more* than those who disclose. PayScale, The Truth About the Salary History Question, http://www.payscale.com/data/salary-history (lasted visited Sept. 14, 2017).

[62] Federal courts have found a reasonable fit between laws limiting the time during which commercial speech can occur and the government's interest in protecting people from abusive practices.  *See McKinley v. Abbott*, 643 F.3d 403 (5th Cir. 2011) (upholding regulation prohibiting 30-day ban on communication or solicitation concerning action for personal injury or wrongful death disaster involving person to whom communication or solicitation is provided or relative of that person); *Walraven v. N.C. Board of Chiropractic Examiners*, 273 F. App'x 220 (4th Cir. 2008) (prohibiting chiropractors from soliciting, prospective patients who may need chiropractic treatment as result of a motor vehicle accident for ninety days following accident); *Capobianco v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004) (upholding regulation prohibiting chiropractors from soliciting accident victims within thirty days of accident).

## CONCLUSION

For all of the foregoing reasons, *amici* respectfully request that this Court rule that the Ordinance does not violate the plaintiff's First Amendment rights and deny the plaintiff's amended motion for a preliminary injunction.


Dated:  September 18, 2017                    Respectfully submitted,

*/s/ Sara J. Rose*
SARA J. ROSE*
PA ID No.: 204936

*/s/ Witold J. Walczak*
WITOLD J. WALCZAK
PA ID No.: 62976

AMERICAN CIVIL LIBERTIES UNION
   OF PENNSYLVANIA
PO Box 23058
Pittsburgh, PA 15222
412-681-7864
srose@aclupa.org
vwalczak@aclupa.org

*/s/ Mary Catherine Roper*
MARY CATHERINE ROPER
PA ID No.: 71107
AMERICAN CIVIL LIBERTIES UNION
   OF PENNSYLVANIA
PO Box 60173
Philadelphia, PA 19102
215-592-1513
mroper@aclupa.org

*s/ Lenora M. Lapidus*
LENORA M. LAPIDUS*
Women's Rights Project
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street
New York, NY 10004
212-549-2500
llapidus@aclu.org

* Admitted *pro hac vice*


*Attorneys for* Amici Curiae

22